# Sittig, Appellant, *v.* Pennsylvania Railroad Company.

*Negligence—Contributory negligence—Head-on collision—Engineer—Single track—Rules of company.*

No recovery can be had for the death of a locomotive engineer killed in a head-on collision on a single track railroad when the evidence shows that the collision was caused by the contributory negligence of the deceased in disregarding a clearly defined and well-understood duty imposed by the railroad regulations and running his train at a high speed two or three minutes ahead of schedule time when he knew that an extra train must be met and passed.

Argued May 4, 1910.   Appeal, No. 114, Jan. T., 1910, by plaintiff, from judgment of C. P. McKean Co., June T., 1906, No. 194, refusing to take off a compulsory nonsuit in case of Thanier Sittig v. Pennsylvania Railroad Company.   Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Trespass for damages for death of plaintiff's husband. Before HOLT, P. J., specially presiding.

The facts appear in the opinion of HOLT, P. J., which was as follows:

This case comes before us on a motion to take off compulsory nonsuit.

William Sittig, the husband of the plaintiff, was killed on the morning of May 13, 1905, while acting as engineer on train 67 which collided with the second section of train 68 on the defendant's road at Hydetown, Pennsylvania.   Trains 67 and 68 were both trains of the second class, and 67 was proceeding northwardly from Oil City to Buffalo, and was entitled to the right of way or a clear track as against No. 68, which was proceeding southwardly from Buffalo to Oil City.   In the absence of special orders, both trains in their movements were

governed by the book of rules and the time card. Train 67, on the run in question, had no special orders, and the second section of train 68 had no special orders, for its movements after leaving Corry, Pennsylvania. Train 67 left Oil City on schedule time, which was 3:50 A. M., at which time section No. 1 of train 68 had arrived at Oil City, of which fact William Sittig, the deceased, had information from the proper source, and was also informed by the proper employee or officer of the defendant company that sections 2 and 3 of train 68 were still out and overdue. The defendant's railroad is a single track road with regular passing sidings, one of which is at Hydetown, Pennsylvania. Rule No. 93 of the defendant company, by which it was admitted William Sittig, the plaintiff's deceased husband, was governed, in the running of his train on the night in question, reads as follows:

"All trains must stop at schedule meeting or passing points on single track, if the train to be met or passed is of the same class, unless the switches are clearly seen to be right, and the track clear. The point at which a train should be stopped is the switch used by the train to be met or passed in going on the siding. When the expected train of the same class is not found at the schedule meeting or passing point, the train having right of track must approach all sidings prepared to stop until the expected train is met or passed."

Before William Sittig left Oil City, he knew that the second section of train 68 was somewhere between Oil City and Buffalo, and that it was overdue, as the first section was in before the time of his departure. Train 67 was due to leave Hydetown station at 4:49 A. M. The collision occurred at a point about 1,000 feet north of Hydetown station at 4:46 A. M., some three or four minutes before train 67 was due at that point, according to schedule time, and at the time of the collision train 67 was running at full speed, from twenty-five to thirty miles an hour, and according to the testimony of some of the witnesses thirty-five miles per hour. The second

section of train 68, with which the collision occurred, had, prior to the collision, come almost to a standstill, about 200 feet north of the north end of the Hydetown siding, for the purpose of running in upon the siding to enable train 67 to pass. The uncontradicted testimony is to the effect that train 68 could have cleared the track in from two to three minutes, and thereby enabled train 67, if running on schedule time, to have passed in safety. It is presumed that William Sittig was familiar with the rule of the company and the time card which governed the movements of his train and all other trains of the same class, in the absence of special orders. He knew that the second section of train 68, would have to keep out of his way, by taking a passing siding so as to give him a clear track, and that in the absence of special orders there was nothing to govern the conductor and engineman on the second section of train 68, save the same rule and time card which William Sittig is presumed to have had in his possession, and he would be presumed to know that if his own train was moving ahead of time a collision was liable to occur between his engine and the second section of train 68. The evidence in this case is uncontradicted that William Sittig's train arrived at the point of collision from two to three minutes before schedule time at that point, without any slowing down, except for a second or two immediately preceding the collision.

At the close of plaintiff's evidence the defendant moved for a compulsory nonsuit on the grounds: That William Sittig was guilty of contributory negligence. Second, that there was no negligence shown on the part of the defendant company, and, third, that the injury was the result of the negligence of coemployees of the plaintiff's deceased husband. We granted a compulsory nonsuit, on the ground of contributory negligence on the part of the plaintiff's deceased husband. We have examined the notes of testimony carefully, and are not satisfied that error was committed in granting the nonsuit. We are not satisfied that any negligence on the part of the

defendant company which contributed to bring about the injury was proven.

*Error assigned* was refusal to take off nonsuit.

*A. R. Osmer,* with him *J. H. Osmer* and *N. F. Osmer,* for appellant.

*F. D. Gallup,* for appellee.

PER CURIAM, July 1, 1910:

It is manifest from the testimony produced by the plaintiff that the collision in which her husband was killed was not caused by an unsafe schedule or by defective rules of the defendant company, but was due entirely to his disregard of a clearly defined and well understood duty.

The judgment is affirmed on the opinion of the learned trial judge.